# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

FILED
Scott L. Poff, Clerk
United States District Court

By casbell at 5:38 pm, Mar 30, 2020

MARVIN B. SMITH, III AND SHARON H. SMITH,

    Appellants,

v.

M. DELORES MURPHY,

    Appellee.

No. 2:19–CV-75

**ORDER**

This matter is before the Court on an appeal by Marvin and Sharon Smith ("the Smiths") of an Order from the United States Bankruptcy Court for the Southern District of Georgia dismissing, with prejudice, the Smiths' adversary proceeding filed on October 10, 2017. See Smith et al v. M. DELORES MURPHY, No. 17-02012, Dkt. No. 22 (Order of Dismissal).[1] This appeal arises out of a long history of litigation concerning property that the Smiths previously owned on Saint Simons Island, Georgia (the "Property"). The Property consists of a single unit (Unit B) of a two-unit condominium complex which the Smiths purchased in 2006. Dkt. No. 15 at 16. Appellee Delores Murphy, and her husband, Michael Murphy,

---

[1] The procedural history of this case involves interrelated filings from multiple dockets. For clarity, the Court will cite to the case number of a given case before identifying the docket entry. If no case number is specified, the docket entry cited is the entry for the appeal at bar.

purchased the other unit (Unit A) in 2011. See id. Both units are collectively governed by the Enchantment by the Sea Condominium Owners Association, Inc. (the "Association"). See id.

Following an economic recession in 2007, the Smiths filed a bankruptcy petition in the United States Bankruptcy Court for the Southern District of Georgia seeking to discharge, inter alia, over $2 million in debt that they had amassed under two separate mortgages on the Property. See No. 07-bk-20244, Dkt. No. 1. After several years of protracted litigation,[2] the bankruptcy trustee filed a notice in April 2012 that the Property would be abandoned from the bankruptcy estate. Dkt. No. 6-4 at 129. In a subsequent objection to a claim on the Property by one of the lienholders, the trustee noted that the lienholder should "look to its collateral for satisfaction of the debt." See id. at 156.

According to the Smiths' Complaint, in March 2015 the Smiths and Murphys met in their role as representatives of the Association, at which time they elected Appellee Delores Murphy as Secretary/Treasurer of the Association and elected Marvin Smith as President. No. 17-02012, Dkt. No. 1 ¶ 10. Delores Murphy and Sharon Smith were appointed as board members. Id. In May 2015, HSBC Bank USA, National Association as Trustee for the Holders of BCAP LLC

---

[2] A more complete history of the Smiths' litigation over the Property is detailed in this Court's order entered on March 30, 2020 in Smith et al v. HSBC Bank et al, No. 2:19-cv-73, Dkt. No. 18.

2

Trust 2006-AA2 ("HSBC") foreclosed on the Property. See id. ¶ 27. Thereafter, in July 2015, Delores Murphy filed a registration certificate with the Georgia Secretary of State purporting to be the CEO of the Association. Id. ¶ 11. This was done, according to the Smiths, "without the authorized signature of Marvin B. Smith." Id. In June 2016, the bankruptcy court discharged the Smiths from their debt. See No. 07-bk-20244, Dkt. No. 699.

In February 2017, the Association filed an action in the Glynn County, Georgia Superior Court seeking to enjoin HSBC Bank, USA and the Smiths from preventing the Association from entering the Property to evaluate damages and make repairs. Dkt. No. 7-2 at 67-74. Ms. Murphy also signed an affidavit in which she purported to be the president of the Association and described deteriorating conditions in and around the Property that were threatening the integrity of her unit as well as the condominium as a whole. See Dkt. No.8-1 at 21-23 (describing "severe water leaks" and water leaking through the ceilings into Unit A; mold and mildew accumulating in Unit A caused by moisture and humidity in the Property; the disrepair of the Property's exterior balcony posing a risk to visitors; and thick vines growing in and around the Property's balcony threatening to damage the exterior of the building). Murphy stated that she had "asked the Smiths to make repairs . . . [but] [t]he Smiths [had] refused, and on occasion [had] threatened to sue me, my guests, and contractors who have

come to the building to inspect the premises and make repairs." Id. In March, the Georgia Superior Court sided with the Association, issuing a temporary restraining order preventing the Smiths from interfering with the Association's efforts to insect, repair, or maintain the Property. See Dkt. No. 7-2 at 27–30. Months later, the Smiths were evicted from the Property pursuant to a writ of possession issued to HSBC USA, N.A. No. 17-02012, Dkt. No. 1 ¶ 30.

In April 2017, the Smiths filed a "Petition for Temporary Protective Order" against Delores Murphy in the Glynn County Superior Court contending that Murphy had committed certain "acts of harassment and intimidation" against the Smiths. No. 07-bk-20244, Dkt. No. 756 at 54–56. In May, Murphy responded with a counterclaim for private nuisance, contending that the Smiths' failure to maintain the Property had caused damage to her unit. Dkt. No. 7-2 at 33–35. Following a jury trial that took place in June 2018, the Glynn County Superior Court entered a final judgment on the counterclaim awarding Murphy approximately $690,000 in damages, attorney's fees, and unpaid fees that had been awarded to Murphy in a previous matter. See No. 07-bk-20244, Dkt. No. 756 at 27–29.

In August 2017, the Smiths filed a "Motion to Enforce The Automatic Stay" (the "First Stay Motion") in their underlying bankruptcy action alleging that Murphy had violated the bankruptcy

4

stay put in place pursuant to the Smiths' 2007 bankruptcy filing. No. 07-bk-20244, Dkt. No. 733. Specifically, the Smiths alleged that Murphy violated the stay by, 1) filing documents with the Georgia Secretary of state declaring herself CEO/President of the Association; 2) seeking a temporary restraining order against the Smiths in the Georgia Superior Court; and 3) filing a counterclaim against the Smiths in the Georgia Superior Court (collectively, the "Stay Violations"). Id.

In October 2017, the Smiths filed an adversary proceeding with the bankruptcy court that is the subject of the present appeal asserting several claims against Delores Murphy, including fraud (Count I), "Fraud Upon the Court" (Count II), "Collusion with Intent to Defraud" (Count III), "Theft" (Count IV), "Violation of Constitutional Rights" (Count V), and "Recklessness" (Count VI). No. 17-02012, Dkt. No. 1. In their final count (Count VII), the Smiths again alleged that Murphy violated the automatic bankruptcy stay, asserting the same Stay Violations that they had identified in the First Stay Motion. Id. In November 2017, Delores Murphy filed a Motion for Judgment on the Pleadings alleging, inter alia, that the bankruptcy court lacked jurisdiction over each Count of the Smiths' Complaint. No. 17-02012, Dkt. No. 15.

In January 2018, the bankruptcy court entered an order denying the First Stay Motion on the basis that parties could not seek injunctive relief by motion and that such relief must be sought

5

via an adversary proceeding. No. 07-bk-20244, Dkt. No. 750. Apparently undeterred by this finding, in September 2018, the Smiths filed another motion in their underlying bankruptcy action seeking to enforce the automatic bankruptcy stay or discharge injunction and to hold the Delores Murphy, and the attorneys and law firm representing her, in contempt (the Second Stay Motion"). See No. 07-bk-20244, Dkt. No. 756. In support, they alleged violations similar to the Stay Violations from the First Stay Motion and the adversary proceeding. Id. at 13. Pursuant to their motion, the Smiths asked for an injunction voiding the final judgment on Murphy's counterclaim, damages for the respondents' alleged violation of the stay or discharge injunction, and an order requiring that the respondents show cause why they should not be held in contempt. Id. at 23.

In June 2019, the bankruptcy court denied the Second Stay Motion, No. 07-bk-20244, dkt. no. 757, and also dismissed the adversary proceeding, No. 17-02012, dkt. no. 22. With respect to the latter order, the bankruptcy court found that it lacked subject matter jurisdiction over Counts I-VI of the Smiths' Complaint because those claims "do not rest on any section of the Bankruptcy Code for relief and they do not involve any violations of the Bankruptcy Code." No. 17-02012, Dkt. No. 22 at 9-10. The bankruptcy court further found that it lacked jurisdiction over Count VII because the trustee had abandoned the Property prior to the alleged

6

violations of the automatic stay, effectively removing the Property from the bankruptcy estate and from the jurisdiction of the bankruptcy court. See id. at 12-13. Likewise, the court found that the trustee's abandonment had terminated the automatic stay with respect to the Property. Id. Finally, the court concluded that even if the stay was still in place, Count VII must also fail because the Smiths were not longer members of the Association, which had been acquired by another entity via the foreclosure at the time of the alleged stay violations. Id. at 13-14.

The Smiths appealed the denial of the Second Stay Motion, as well as the dismissal of their October 2017 adversary proceeding, to this Court. The former appeal is the subject of a separate matter pending before this Court. However, with respect to the adversary proceeding, the Smiths identify several points of error with the bankruptcy court's decision, including that the court erred generally by dismissing each of their claims; that the court erred by failing to issue a scheduling order to allow discovery to proceed pending the decision on whether to dismiss the action; and that the court deprived the Smiths of their due process rights under the Fifth Amendment. See Dkt. No. 15. For the reasons that follow, the Court finds that the bankruptcy court did not err in dismissing, with prejudice, the Smiths' adversary proceeding and affirms the decision of the bankruptcy court.

**LEGAL STANDARD**

A district court reviewing a bankruptcy court judgment functions like an appellate court. In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993). Though it reviews the bankruptcy court's legal conclusions *de novo*, it must accept the court's factual findings unless they are "clearly erroneous." Id. Mixed questions of law and fact are reviewed *de novo*. In Re Cox, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007).

**DISCUSSION**

**I. The bankruptcy court did not err in dismissing the Smiths' claims for lack of subject matter jurisdiction**

On appeal, the Smiths first challenge the bankruptcy court's dismissal of each of their claims for lack of subject matter jurisdiction.[3] A bankruptcy court's subject matter jurisdiction is limited by statute. Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). Specifically, 28 U.S.C. § 1334 provides that district courts have "original but not exclusive jurisdiction of all civil

---

[3] The Smiths also challenge the bankruptcy court's decision on the basis that their Complaint identifies sufficient facts to entitle them to relief pursuant to the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). See Dkt. No. 15 at 33. However, the Smiths here rely on the standard for a Rule 12(b)(6) motion to dismiss under the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). Here, the Court affirms the bankruptcy court's decision made on the basis of Rule 12(b)(1), which is also made applicable by bankruptcy Rule 7012(b). Because subject matter jurisdiction is a threshold question that precedes any other dispositive questions about the viability of a case, the fact that the Smiths' Complaint might otherwise state a claim for relief is irrelevant. See United States v. Salmona, 810 F.3d 806, 810 (11th Cir. 2016) ("Without subject matter jurisdiction, a court has no power to decide anything except that it lacks jurisdiction."). Likewise, the Smiths' additional contention that there are disputed "[m]aterial [f]acts," Dkt. No.15 at 34, is also inconsequential.

proceeding arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). To satisfy the "arising under" prong of § 1334(b), the proceedings must "invoke a substantive right" created by the Bankruptcy Code. Continental Nat'l Bank v. Snachez (In re Toledo), 170 F.3d 1340, 1348 (11th Cir. 1999) (quoting Wood v. Wood. (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)). Alternatively, to determine whether a proceeding is "related to" Title 11, courts ask whether "the potential outcome of the dispute . . . would 'conceivably have an effect' on the bankruptcy estate." Wortley v. Bakst, 844 F.3d 1313, 1320 (11th Cir. 2017) (quoting In re Lemco Gypsum, Inc., 910 F.2d 784, 788 (11th Cir. 1990)).

With respect to Counts I-VI, the Smiths do not contend that these claims "arise under" the bankruptcy code, but rather that the claims are sufficiently "related to" Title 11 to confer federal jurisdiction. Dkt. No. 15 at 38. However, on June 1, 2016, the bankruptcy court entered an order discharging the Smiths' debt, No. 07-bk-20244, Dkt. No. 699, and on September 15 the bankruptcy trustee filed his final account of the administration of the estate pursuant to 11 U.S.C. § 704(a)(9), see No. 07-bk-20244, Dkt. No. 709. There being no objection from the Smiths, the estate was presumed to be fully administered on October 16, 2016, see Fed. R. Bankr. P. 50009(a). At that time, no bankruptcy estate remained, and the bankruptcy court effectively lost jurisdiction to hear

9

claims based solely on the fact that the outcome of those claims might affect the bankruptcy estate. See Mofitt v. America's Servicing Co. (In re Moffitt), 406 B.R. 825, 832 n.7 (Bakr. E.D. Ark. 2009) ("Existence of a bankruptcy estate is critical when the court is determining whether it has 'related to' jurisdiction."). The Smiths' blanket assertion that Count I-VI "satisfy the 'related to' criteria" is not sufficient to save those claims from dismissal.

Nevertheless, the Smiths also contend that the bankruptcy court erred in finding it lacked jurisdiction to hear Count VII regarding alleged violations of the automatic stay. The bankruptcy court correctly concluded that Count VII survives the initial jurisdictional hurdle under 28 U.S.C. § 1334 because questions concerning a bankruptcy stay necessarily "arise under" Title 11. No. 17-02012, Dkt. No. 22, at 10. However, it nonetheless concluded that it lacked jurisdiction to hear that claim because Count VII concerns actions taken with respect to the Property, which is no longer part of the bankruptcy estate. Id. at 12. The Smiths argue that this finding was made in error because a bankruptcy estate remains open until the case itself is closed. Dkt. No. 15 at 46-47. This argument fails for two reasons. First, the Eleventh Circuit has already specifically rejected this argument with respect to a separate motion filed by the Smiths, finding that the "automatic stay expired on 1 June 2016: the day the bankruptcy

court granted [the Smiths] a Chapter 7 discharge." Smith v. HSBC Bank USA. N.A., 775 Fed. App'x 492, 495 (11th Cir. 2019).

Second, even if it is true that a bankruptcy estate remains open until the underlying case is closed, the Property itself ceased to be part of the estate after it was abandoned by the trustee in April 2012. See Johnson v. Countrywide Home Loans (In re Johnson), No. 03-01184A, 2004 Bankr. LEXIS 2342, at *6 (Bakr. S.D. Ga. Jan. 16, 2004) ("Jurisdiction does not follow property . . .[when it] leaves the estate.") (quoting In re Xonics, Inc., 813 F.2d 127, 131 (7th Cir. 1987)). It was not until after this date that the alleged Stay Violations occurred. See Dkt. No. 7-2 at 17 (registration certificate identifying Delores Murphy as president of the Association filed in July 2015); See also Dkt. No. 7-2 at 67-74 (action for temporary restraining order filed in February 2017); see also Dkt. No. 7-2 at 33-35 (counterclaim by Delores Murphy filed in May 2017). Accordingly, the Smiths cannot contend that any of those events violated the automatic stay, which had long ceased to exist with respect to the Property. For these reasons, the decision of the bankruptcy court that it lacked jurisdiction over each of the Smiths' claims is affirmed.

**II. The bankruptcy court did not err in failing to allow the parties to conduct discovery pending the decision on Murphy's Motion for Judgment on the Pleadings**

The Smiths next argue that the bankruptcy court erred by failing to issue a scheduling order enabling the parties to conduct

discovery pending the outcome of the decision on Murphy's Motion for Judgment on the Pleadings. Dkt. No. 15 at 51-52. Though not specifically cited by the Smiths, Rule 16 of the Federal Rules of Civil Procedure outlines certain time limitations for the court to issue a scheduling order. See Fed. R. Civ. P. 16(b)(2). However, the court, in its discretion, may delay the issuance of such an order if there is "good cause" for the delay. Id. Here, the Smiths brought a bankruptcy adversary proceeding asserting a series of vague causes of action against parties who were not creditors in the underlying bankruptcy action. Moreover, the bankruptcy court was well aware of the Smiths' extended history of frivolous litigation, which had resulted in—at that time—at least two separate sanctions. Therefore, when presented with a motion contending that it lacked jurisdiction over the Smiths' claims, the bankruptcy court had good cause to delay a potentially lengthy and burdensome discovery process pending its decision on that motion.

Moreover, even if the bankruptcy court did somehow err in failing to issue a scheduling order, which it did not, the Smiths do not explain how such error substantially effected their rights in this case. See Club Assocs v. Consol Capital Reality Investors (In re Club Assocs.), 951 F.2d 1223, 1234 (11th Cir. 1992) (finding that the court must disregard errors or defects that does not affect a party's "substantial rights.") (quoting Fed. R. Civ. P.

61) (emphasis omitted). Indeed, where the bankruptcy court found—and this court agreed—that it lacked subject matter jurisdiction to hear the Smiths' claims, a scheduling order permitting discovery to move forward would inevitably be moot at this time. Accordingly, the Court finds no error in the bankruptcy court's decision not to issue a scheduling order.

### III. The bankruptcy court did not deprive the Smiths of their due process rights

Next, the Smiths argue, somewhat vaguely, that the bankruptcy court deprived them of their due process rights under the Fifth Amendment. Dkt. No. 15 at 54-58. Their argument, presented in narrative format, identifies a series of discrete actions that they contend infringed on their constitutional rights. First, they point to the bankruptcy court's order dismissing the First Stay Motion on the basis that injunctive relief must be sought via an adversary proceeding. See No. 07-bk-20244, Dkt. No. 750. The Smiths argue that despite having filed an adversary proceeding alleging the same issues here, their request for relief was nonetheless denied. However, it should have been abundantly clear to the Smiths that the bankruptcy court's January 2018 order was not a guarantee that the relief they sought would be granted if filed in a different format. Indeed, the bankruptcy court's order simply outlined a procedural defect in their motion that would need to be corrected before the merits of their argument could be considered.

13

The Smiths argument on this point is not only misguided, but frivolous.

Second, the Smiths argue that they were "denied equal treatment under the law" after being "told by the Clerks' office that no hearings were to be scheduled" in their cases. Dkt. No. 15 at 56. Instead, their pleadings "were simply to be sent to Chambers." Id. Though the Smiths provide little context or evidence in support of this argument, they appear to be referencing sanctions put in place by both the bankruptcy court and the Eleventh Circuit whereby the Smiths were required to comply with specified preconditions before making certain types of filings against certain parties. See No. 07-bk-20244, Dkt. No. 566 at 23; see also Smith v. Countrywide Home Loans, Inc., No. 13-13808, 2013 U.S. App. LEXIS 26218 at *1-2 (11th Cir. Dec. 19, 2013). To the extent that the Smiths seek to challenge those sanctions as unconstitutional, the Court declines to entertain that argument here because the matter is not appropriately before this Court on appeal. Indeed, the adversary proceeding at the heart of this appeal was not subject to the pre-filing requirements laid out in previous sanctions. Moreover, to the extent that the Smiths seek to challenge the fact that they were not offered a hearing on Murphy's Motion for Judgment on the Pleadings, the Court also rejects this argument as the Smiths have not pointed to any issues

14

material to the bankruptcy court's decision that would have called for a hearing.

Next, the Smiths argue that their constitutional rights were violated when they were "denied discovery in violation of Rule 26(f)." Dkt. No. 15. This argument appears to be largely duplicative of their argument discussed above concerning the bankruptcy court's failure to issue a scheduling order. For the reasons explained above, the Court finds any error to be harmless and any injury to the Smiths to be moot.

Finally, the Smiths argue that the bankruptcy court erred by failing to let them amend their Complaint to correct deficiencies outlined in the dismissal order. In support, they cite to <u>Corsello v. Lincare, Inc.</u>, which held that "[o]rdinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint." 428 F.3d 1008 (11th Cir. 2005). However, the court in that case went on to hold that an amendment need not be allowed "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." <u>Id.</u> In its dismissal order, the bankruptcy court declined to grant the Smiths' request to amend, finding that amendment would be futile. No. 17-02012, Dkt. No. 22. The Court agrees. Indeed, the bankruptcy court simply lacks jurisdiction

over claims related to Property that has been abandoned from the bankruptcy estate. No change to the Smiths' pleading could plausibly undo this defect.

## Conclusion

For the reasons stated above, the bankruptcy court's order, No. 17-02012, dkt. no. 22, is **AFFIRMED**. The clerk of court is instructed to **DISMISS** the appeal.

**SO ORDERED**, this 30th day of March, 2020.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA